UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jack Shepard                                                    Civ. No. 12-1513 (PAM/SER)

          Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**

TheHuffingtonPost.Com, Inc.,

          Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss and Plaintiff's

Motions for Default Judgment.  For the reasons that follow, Defendant's Motion is granted

and Plaintiff's Motions are denied.

**BACKGROUND**

Plaintiff Jack Shepard claims that TheHuffingtonPost.com maliciously libeled him in

an article first published online on May 20, 2010.  At the time, Shepard was a candidate for

Congress.  The article was titled "Support Jack Shepard, The Arsonist, For Congress."

Shepard first saw the article in April 2011.  Shepard alleges that since its original date of

publication, the article has been repeatedly republished online by The Huffington Post, as

recently as May 25, 2011.  Although Shepard says that the later-published versions of the

article were "updated" versions of the original, there appears to be is no substantive

distinction among the later-published versions of the article and the original.[1]

Shepard contends that four specific aspects of the article are libelous. First, the article's headline calls Shepard an "arsonist" when, in fact, he was charged with arson but was never convicted because he fled to Italy before trial. The body of the article clarifies that Shepard was "accused of arson in 1982." Second, the article states that Shepard was "[k]icked off the ballot in 2004 for being a fugitive felon," but fails to explain that he was later put back on the ballot. Third, the article correctly states that Shepard was "convicted of criminal sexual conduct and drug possession," but fails to explain extenuating circumstances relating to those convictions. Fourth, the article says that Shepard is "cloistered" in Italy, which he contends incorrectly implies that he is in hiding.

**DISCUSSION**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986)

---

[1] At the hearing, Shepard argued that there are four new defamatory articles. He does not reference any of these new articles in the Complaint, nor has he provided any details about their content. Based on Shepard's submissions, it appears that the new articles he references are merely hyperlinks to the original article or, at most, republications of that article. (See Docket No. 22 at 4-7.)

(citations omitted).  The complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## A.    Statute of Limitations

Under Minnesota law, the statute of limitations for a defamation claim is two years. Minn. Stat. § 541.07(1).  The limitations period begins to run on the date of publication, not when the statement is discovered by the claimant.  Hayes v. Blue Cross Blue Shield of Minn., 21 F. Supp. 2d 960, 978 (D. Minn. 1998) (Erickson, M.J.) (citing Wild v. Rarig, 234 N.W.2d 775, 794 & n.21 (Minn. 1975)).  Here, the date of publication was May 20, 2010.  Shepard filed his Complaint on June 25, 2012, one month after the limitations period expired.

Shepard argues that because the article was republished as late as May 25, 2011, the limitations period did not begin to accrue until that date.  Minnesota long ago adopted the "single-publication rule" under which,

> the statute of limitations begins to run when a mass-produced newspaper, book or magazine is first released to the public . . . . [T]he "single-publication rule" is the better rule because it reflects the fact of modern-day mass publishing and duplicating and gives effect to the policy of repose underlying the statute of limitations.

Church of Scientology of Minn. v. Minn. State Med. Assoc. Found., 264 N.W.2d at 152, 155 (Minn. 1978).  Although not yet addressed by Minnesota courts, the single-publication rule has been applied to Internet publications in many other jurisdictions.  The seminal case on this point is Firth v. State of New York, 775 N.E.2d 463 (N.Y. 2002).  In Firth, the plaintiff sued the publisher of an investigative report that was published on the Internet.  Id. at 464.

The plaintiff argued that because the report was continually available on the Internet, each day resulted in a new publication of the report. Id. at 465. The court held that "a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants." Id. at 466. The court further recognized that if it applied the continuous publication rule "[i]nevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise." Id. (citations omitted). Thus, the court held the single-publication rule applies to Internet publications. Id. Every court to consider the issue after Firth has followed suit. See, e.g., In re Philadelphia Newspapers, LLC, 690 F.3d 161, 174 (3d Cir. 2012); Oja v. Army Corps of Eng'rs, 440 F.3d 1122, 1133 (9th Cir. 2006); Van Buskirk v. New York Times Co., 325 F.3d 87, 89 (2d Cir. 2003); Mitan v. Davis, 243 F. Supp. 2d 719, 724 (W.D. Ky. 2003); Churchill v. State, 876 A.2d 311, 316 (N.J. 2005); McCandliss v. Cox Enters., 593 S.E.2d 856, 858 (Ga. 2004); Traditional Cat Ass'n v. Gilbreath, 13 Cal. Rptr. 3d 353, 361-62 (Cal. 2004). There is no reason to believe that Minnesota would not also follow suit.

Therefore, the statute of limitations begins to accrue on the first date of publication where subsequent republications have the same content as the original publication. Shepard argues that the single-publication rule does not apply because the article was "updated" over time. Contrary to his assertions, however, the content of the article does not appear to have changed. Instead, the "new" articles cited by Shepard appear to be hyperlinks to the original

article, which do not restart the statute of limitations.  See Philadelphia Newspapers, 690

F.3d at 175 (providing a new link to original article "may allow for easy access" to the

article, but does "not amount to the restatement or alteration of the allegedly defamatory"

content).  Accordingly, any subsequent republications of the article were incidental and the

single-publication rule applies to bar Shepard's claim.

**B.     Tolling**

Shepard argues that the limitations period should be tolled under the Servicemembers

Civil Relief Act, 50 U.S.C. App. § 526.  In order for the Act's tolling provision to apply,

Shepard must be on "active duty."  50 U.S.C. App. § 511(2)(A)(i).  "The term 'active duty'

means full-time duty in the active military service of the United States."   10 U.S.C.

§ 101(d)(1).

As evidence of his active-duty status, Shepard provided the Court with a photocopy

of his military identification card issued on July 6, 1970, which includes an "indefinite"

expiration date.  (Shepard Decl. Ex. 6.)  The ID card does not support Shepard's claim that

he is currently an active member of the military, however.  Shepard also submitted a

photograph of a passport page indicating that the passport holder has traveled to Gaza.

(Docket No. 34.)  Shepard contends that the photograph establishes that he is working on

behalf of the United States Government and that he is therefore an active member of the

military.  Even if the passport belongs to Shepard, which he has not established, it is evidence

of nothing more than that he has traveled to Gaza.

Shepard also submitted a photograph of himself with an unidentified man standing in front of a poster with Arabic writing and two unidentified flags, which he contends evinces his work on behalf of the Government.  (Docket No. 33.)  As with Shepard's other exhibits, this photograph does nothing to substantiate Shepard's claim that he is an active duty member of the military.

The Huffington Post responds to the tolling argument by providing a "Status Report" from the Department of Defense Manpower Data Center, which indicates that Shepard is not an active-duty service member.  (Fallow Reply Decl. Exs. A and B.)  Shepard in turn responds that the status report is not reliable because he is involved in covert operations and that there is no public information available about him.  Shepard provides no evidentiary support for this statement, nor does he credibly demonstrate that he is in working on behalf of the United States Government in any capacity.  Shepard has failed to produce concrete and verifiable proof that he an active duty member of the military.[2]  Under these circumstances, the Servicemembers Civil Relief Act's tolling provision does not apply.  The statute of limitations bars Shepard's claim its entirety.

**C.    Merits**

Even if timely, Shepard's claim lacks merit.  Three of the four allegedly defamatory statements are not actionable because they are either true or permissible hyperbole.  First, the

---

[2] When pressed on this issue during the hearing, Shepard indicated that he would provide a letter from the White House or from his commanding officer by Monday, November 12, 2012.  The Court has received no such documentation.

portion of the article saying that Shepard was "[k]icked off the ballot in 2004 for being a fugitive felon" is in fact substantially true.  Shepard was taken off the ballot.  He was also later placed back on the ballot because the Minnesota Supreme Court determined that a previous felony conviction is not a basis to disqualify a candidate.  That he was later reinstated on the ballot, however, does not undermine the statement's truth.  The Huffington Post had no duty to provide this additional information.

Second, the article also correctly states that Shepard was "convicted of criminal sexual conduct and drug possession."  The failure to include what Shepard believes were extenuating circumstances surrounding those convictions does not undermine the statement's accuracy.

Third, the article's use of the term "cloistered" is also insufficient to establish defamation because it is protected rhetorical hyperbole.  Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000).

The final allegedly libelous statement is from the article's headline, which states that Shepard is an "arsonist."  Shepard argues that because he has not been convicted of arson, it is inaccurate to say that he is an arsonist.  The body of the article, however, states that Shepard "was accused of arson in 1982," thereby clarifying the article's title.  Because the "defamatory character of any particular statement must be construed in the context of the article as a whole," Jadwin v. Minneapolis Star Tribune & Co., 390 N.W.2d 437, 443 (Minn. Ct. App. 1986), the use of the term "arsonist" in the headline is not actionable.

**D.    Default Judgment**

Shepard has filed two Motions for Default Judgment, arguing that The Huffington

Post did not file a timely responsive pleading.  The docket establishes otherwise.  Shepard's

Motions are denied.

**CONCLUSION**

Plaintiff Jack Shepard's claim is time-barred and lacks merit.  Accordingly, **IT IS**

**HEREBY ORDERED that**:

1.      Plaintiff's Motions for Default Judgment (Docket Nos. 11, 15) are **DENIED**;

2.      Defendant's Motion to Dismiss (Docket No. 5) is **GRANTED**; and

3.      Plaintiff's Complaint is **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: <u>November 15, 2012</u>

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge